6419.  LEWIS, *alias* JENNINGS, *v.* CITY OF FITZGERALD.

In the absence of any circumstance indicating the purpose for which it was to be used, mere possession of a barrel of whisky will not authorize a conviction of the violation of a municipal ordinance prohibiting the keeping of intoxicants for the purpose of illegal sale. That the quantity of intoxicants in one's possession is unusually large is a circumstance which may be considered, with other facts and circumstances in a case, in determining the purpose for which the intoxicants are kept; and, in connection with proof that the possessor has sold or attempted to sell the intoxicants in question, it may authorize conviction. But inasmuch as it is not unlawful to own intoxicants, no matter how large the quantity, mere proof of possession and ownership is as consistent with innocence as with the supposition that the custody and possession of the intoxicant was for the purpose of unlawful sale. It was error to refuse to sanction the petition for certiorari.

                    DECIDED OCTOBER 15, 1915.

Certiorari; from Ben Hill superior court—Judge George. February 10, 1915.

*Elkins & Koplin, U. J. Bennett, McDonald & Grantham,* for plaintiff in error.

*J. B. Wall, solicitor-general, E. Wall, solicitor,* contra.

RUSSELL, C. J.   The plaintiff in error presented a petition for certiorari, which was denied. The merit of the cause, in advance of the coming in of the answer, is of course to be determined by the allegations of the petition for certiorari. *Linder* v. *Renfroe,* 1 *Ga. App.* 58 (57 S. E. 975). The petitioner in this case was convicted in the mayor's court of the City of Fitzgerald of a violation of a municipal ordinance which penalizes the keeping, for the purpose of illegal sale, of any malt, spirituous, fermented, or other intoxicating liquors. The petition for certiorari alleged that the judgment of conviction in the municipal court was contrary to evidence, without evidence to support it, and contrary to law. The testimony was very brief. S. C. Pryor testified, that he saw the defendant's name on a barrel of whisky. He saw a team of one Cash Booker backed up against the platform at the depot. He kept his eye on the team until he "saw Mr. Heck come down in a

few minutes, and they all went in together." He saw "Booker's team drive off rapidly from the depot" and followed it. He further testified: "The next time I saw the negro he was in Mr. Johnson's pool room. I arrested him because I saw his name on the barrel of whisky." "As soon as I got up with Mr. Booker, I arrested him and brought him and the whisky to the police station. The barrel had whisky in it." McKay, the warehouseman at the depot, testified: "I saw this defendant yesterday. Saw him at the freight office. I delivered him a barrel. I delivered that barrel to J. Jennings. I delivered the barrel to the draymen at the direction of this defendant. I did not deliver it to this defendant personally. He simply signed for it, and I delivered it to the drayman at his direction. That was all that was done." Pryor further testified that the defendant, when arrested, freely and voluntarily admitted the ownership of the liquor. This was the only evidence in the case except a pint cup with some liquid in it, which was not identified or connected in any way with the defendant.

The learned trial judge, in declining to sanction the petition for certiorari, said: "In my opinion the quantity of the whisky found in applicant's possession, and the clandestine manner in which he received it (having had it shipped under an alias), are sufficient to warrant his conviction of the offense of 'keeping liquor on hand for purpose of sale', and I refuse the writ. I reach this conclusion as any practical man, from the facts proved, and beyond any reasonable doubt, and more especially in view of the fact that no explanation whatever was offered by the applicant. It is true that the evidence does not show the size of the barrel, but the fact remains that he did receive under an assumed name a barrel of whisky, and had the same in Fitzgerald, and the police judge had the facts all before him."

It appears in the record, without contradiction, that the defendant was known indifferently as Will Lewis and as J. Jennings. The prosecutor himself testified that he never knew the defendant "until Saturday morning," and had heard others say that his name was Jennings. So that the evidence does not show that J. Jennings was any more an assumed name than Will Lewis. But the mere fact that one might prefer to purchase liquor under an assumed name would not of itself be sufficient to authorize the con-

clusion that his purchase was designed for the purpose of illegal sale, rather than that he was anxious to avoid the opprobrium of being an excessive drinker. The case, therefore, really turns upon the question as to the quantity of the liquor, and the sufficiency of the proof of quantity to compel the conclusion that one would not purchase so large a quantity unless he intended to sell it. The trial judge was evidently controlled by the view that the receipt of such a quantity of liquor was sufficient to have authorized the mayor pro tem. to, conclude that the defendant could only have wanted so large a quantity because it was his purpose to engage in the illegal traffic of intoxicants; for, in concluding his judgment, he adverted to the fact that the evidence does not show the size of the barrel, but that the fact remained that he did receive a barrel of whisky. In *Everett* v. *Vidalia,* 14 *Ga. App.* 664 (82 S. E. 50), we pointed out that there must, to constitute a violation of a municipal ordinance such as that now before us, be evidence of an intent to keep the liquor on hand for the purpose of sale, just as there can not be a violation of any penal law unless there be an intent to do an act forbidden by law. Since it is not unlawful to own and possess for one's own use any quantity of intoxicants, no matter how large, mere ownership of a quantity of liquor extraordinarily large is not a circumstance from which the intent to violate the law by selling can of itself be implied. It is true that when taken in connection with other circumstances it may be a circumstance of great probative value. But considered alone, the possession of a barrel of whisky can not, as a matter of law, be said to be conclusive of an intent to sell. To so hold would be to discriminate between the owner of a large wine cellar and a person of more moderate means in such a way as practically to deny the latter the equal protection of the laws. If there had been any evidence that the defendant sold or attempted to sell the intoxicants which he delivered to the drayman, or perhaps even if he had made preparation to sell intoxicating liquors, or if any of the paraphernalia of a liquor seller had been found in his possession, the quantity of liquor might have been a pregnant circumstance which, together with other facts in the case, would have authorized his conviction. It may be (as argued by learned counsel for the city) that there was other evidence before the mayor pro tem, but this court is bound by the record, as was also our learned brother of

the trial bench, and for this reason, in the opinion of a majority of the court, the judge erred in refusing to sanction the petition for certiorari.　　　　　　　　　　　　　*Judgment reversed.*

BROYLES, J., dissenting. The evidence shows that the defendant was a negro who was employed in a pool-room. He was described by one of the State's witnesses as a "suspicious character." The undisputed evidence was that he had a barrel of whisky in his possession. This court will take judicial cognizance that a barrel of whisky costs considerable money, and the possession of such a large and costly quantity of intoxicating liquor by a negro who works in a pool-room and who is "a suspicious character" would, in my opinion, authorize the inference that he had the liquor, not for his own consumption, but for the purpose of unlawfully disposing of it. This inference, of course, could be rebutted, but in this case the defendant offered no evidence. He did not even go upon the stand to make a statement in the case, and offered no explanation whatever of why he had this large amount of whisky. This court has repeatedly held that where there is *any* evidence to sustain a conviction by the jury, or by the mayor, or recorder (exercising the functions of both judge and jury), this court is not authorized to, and will not, interfere. Under the facts in this case I do not see how it can be said that there is *no* evidence to sustain the judgment of the mayor and the judgment of the judge of the superior court.